# EXHIBIT A

# TODD & WELD LLP
ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

CHRISTOPHER WELD, JR.
Email: cweld@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

March 25, 2008

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mark E. Speese, Chief Executive Officer
Rent-A-Center, Inc.
Rent-A-Center East, Inc.
5501 Headquarters Drive,
Plano, Texas 75024

Re: DEMAND FOR RELIEF PURSUANT TO MASSACHUSETTS GENERAL LAWS CHAPTER 93A § 9

Dear Mr. Speese:

Please be advised that this firm and others represent Jaaziel Costa ("Mr. Costa") and Joy Silva ("Ms. Silva"), on behalf of themselves and all other persons in the Commonwealth of Massachusetts who, since at least March 25, 2004 entered into "rent-to-own" contracts at any Rent-A-Center or RentWay branded store in Massachusetts for merchandise for a stated term of four months or longer. This letter is being forwarded to you pursuant to Massachusetts General Laws, Chapter 93A § 9, the Massachusetts Consumer Protection Statute.

For many years, Rent-A-Center, Inc. and Rent-A-Center East, Inc.[1] (together "Rent-A-Center") and RentWay, Inc ("RentWay") have operated retail locations throughout Massachusetts and during that time have maintained a policy and practice of "renting to own" electronic goods, appliances, furniture and other items through purported "consumer lease agreements." We understand that Rent-A-Center, Inc. acquired all the stock of RentWay, Inc. in the fall of 2006 and has therefore acquired its liabilities; it also controls, and has controlled, the operation of RentWay stores and assumed the servicing of any prior RentWay contracts. The Rent-A-Center and RentWay "consumer lease agreements" have violated and continue today to violate: (1) the Massachusetts Retail Installment Sales Act, Massachusetts General Law Chapter 255D by failing to provide disclosures required by Massachusetts law and by charging interest and/or finance charges vastly in excess of the statutory limit for 21%, and (2) the Massachusetts' unfair trade practices law, Massachusetts General Law chapter 93A by unfairly and deceptively hiding from consumers the interest in the contracts and the violation of Massachusetts law.

---

[1] We understand that Rent-A-Center, Inc. operates in Massachusetts through its wholly-owned subsidiary Rent-A-Center East, Inc. This letter is intended to be directed to the legal entity which owns and operates the Rent-A-Center and RentWay branded retail stores throughout Massachusetts.

Mark E Speese
Page 2
March 25, 2008

On or about May 13, 2006, Mr. Costa visited a Rent-A-Center store in Worcester, Massachusetts and entered into a contract with Rent-A-Center for the purchase of a *used* laptop computer Mr. Costa entered into an agreement with Rent-A-Center that set out a purchase term of eighty-two (82) weeks.[2] Mr Costa believes he was presented with a contract with standardized, pre-printed terms of adhesion[3] Upon information and belief, his written agreement states that the purported "fair market value" of the used computer was $1,434 59,[4] and provided that Mr Costa would own the used computer after making 82 weekly payments of $36 74, for a total of $3,012.68 Mr Costa made payments on the computer from May of 2006 through December 8, 2007, when he purchased the computer from RAC by paying a lump sum of cash According to Rent-A-Center's summary of Mr Costa's contract, he paid $2,583 63 to "rent" a used computer for a year and a half

Upon information and belief, Mr Costa's contract with Rent-A-Center was substantially similar in all material respects to the form contract presented by Rent-A-Center and RentWay to each of their Massachusetts customers because all such contracts provided for the lease and purchase of consumer goods by the payment of a set number of periodic payments and in amounts that contain finance and/or interest charges exceeding the statutory amount of 21% per annum set forth in Massachusetts General Laws Chapter 255D § 11B

More specifically, the standard form Rent-A-Center contracts set forth terms for the sale of goods, and further stated that the consumer has the option to complete the prescribed number of payments and thereupon obtain ownership, stating "[i]f you choose to acquire ownership, you must rent the property for the number of weeks, semi-months or months shown below." The pre-printed Rent-A-Center contracts also state that the consumer will "own the property [once] you have made the total payment necessary to acquire ownership." As with a traditional loan, the purchaser also has the option to pay the note off early and avoid some of the remaining finance charges through the "Early Purchase Option" Mr Costa exercised

On or about December 18, 2005, Ms. Silva visited a RentWay (now a Rent-A-Center) store in Westfield, Massachusetts and entered into a contract for the purchase of a sofa/loveseat, a three pack of occasional tables and a pair of lamps[5] She entered into an agreement so she

---

[2] The Massachusetts Rent-To-Own statute, G L c 93 §90 does not apply to the Agreement as the provisions of that statute are explicitly limited to consumer lease agreements of four months or less

[3] Over the past few months, Mr Costa repeatedly requested from Rent-A-Center a full copy of his agreement with RAC but was told the Agreement could not be located Instead, Mr Costa was provided with the print out summary attached at Tab A

[4] This appears to be false and inflated How, exactly, a used laptop computer could ever have a "fair" value of over $1,400 is hard to fathom

[5] This was just one of many transactions between Ms Silva, on one hand, and RentWay and/or Rent-A-Center, on the other

Mark E Speese
Page 3
March 25, 2008

could pay off the items over a period of one hundred and four (104) weeks. Like Mr. Costa, Ms. Silva was presented with a contract with standardized, pre-printed terms of adhesion. Her agreement states that the purported "cash price" of the items was $1,299.48, and provided that Ms. Silva would own the items after making 104 weekly payments of $24.99, for a total of $2,598.96. Ms. Silva made payments on the items for many months and subsequently entered into a number of other contracts concerning the purchase of other household items.

As with Mr. Costa, Ms. Silva's RentWay contract set forth terms for the sale of goods, and further stated that the consumer has the option to complete the prescribed number of payments and thereupon obtain ownership, stating "to acquire ownership of the property, you must 104 weekly rental payments (due every Wednesday) totaling $2598.96 plus taxes and fees." The pre-printed contract also states that the consumer will "not own the property until you pay the Early Purchase Option price or pay the total number and amount of all payments necessary to acquire ownership." As with a traditional loan, the purchaser also has the option to pay the note off early and avoid some of the remaining finance charges through the "Early Purchase Option." We understand and believe that during the relevant time period, all Massachusetts consumers who did business with RentWay received adhesion contracts with terms substantially similar or identical terms to that of Ms. Silva.

These contracts, notwithstanding their professed form as lease contracts and statements that they are "consumer lease[s]" and "rental transaction[s]," are actually retail installment sales contracts disguised as rental agreements. Indeed, Rent-A-Center and RentWay's contracts fit precisely within the Massachusetts statutory definition of a retail installment sale, inasmuch as Rent-A-Center and RentWay, on one hand, and the consumer, on the other, agree that the consumer becomes, or will become, or for no other or for a nominal consideration has the option to become the owner of the goods, upon full compliance with his or her purchase obligations under the contract. As a result, these consumer contracts are governed by the Massachusetts Retail Installment Sales Act ("RISA"), Massachusetts General Law chapter 255D. RISA provides, in relevant part:

> "Retail Installment sale agreement" shall also include any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the value of the goods involved and it is agreed that the bailee or lessee will become, or for no other or for a nominal consideration has the option to become the owner of the goods upon full compliance with his obligations under the contract.

According to the legal opinion of the Deputy Commissioner of Banks and General Counsel, "in order for a lease to be considered a retail installment sale agreement, it must: (1) require payments substantially equivalent to or in excess of the value of the goods involved; and (2) provide that the lessee will become *or has the option to become the owner of the goods* upon compliance with the contract for no other or nominal consideration." 1996 MA Bank LEXIS 55 (March 28, 1996) (emphasis added).

Mark E. Speese
Page 4
March 25, 2008

As noted above, RISA contains a 21% annual percentage rate limitation on the "finance charge" (i.e., interest and fees) that may be charged in a RISA contract. G.L. Ch. 255D, § 11(B). Rent-A-Center's contract with Mr. Costa, and RentWay's contract with Ms. Silva, as well as those with all other similarly situated Massachusetts consumers, contain finance charges, or interest rates, well in excess of 21%. In practice, RentWay and Rent-A-Center routinely collected, and continue today to collect, payments, interest and finance charges from Massachusetts consumers, including Mr. Costa and Ms. Silva, in direct contravention of RISA.

In addition, Rent-A-Center and RentWay have also violated RISA in failing to contain each and every disclosure required by G.L. Ch. 255D, § 9. In particular, each failed to disclose how much interest in total is being charged, all in an effort to avoid and not comply with RISA.

Inasmuch as Rent-A-Center and RentWay failed to conform to the notice requirements of RISA and failed to disclose that its contracts violate the Act, Rent-A-Center and RentWay also violated Mass. General Laws Chapter 93A, the Massachusetts Consumer Protection Statute. Brunelle v. W.E. Aubuchon Co., Inc., 60 Mass. App. Ct. 626, 628 (2004) ("an act or practice violates G.L. c. 93A, § 2, if 'it fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.') quoting 940 Code Mass. Regs. § 3.16(3) (1993)

The conduct as described above constitutes a pattern of illegality, unfairness, dishonesty and deceptive behavior on the part of Rent-A-Center and RentWay, all of which violates RISA and M.G.L. c. 93A, the consumer protection statute. This statute allows for up to treble damages for a knowing and intentional violations, and the award of attorneys' fees based upon unfair and deceptive acts or practices like those described above.

On behalf of Mr. Costa, Ms. Silva and all other persons in the Commonwealth of Massachusetts who, since at least March 25, 2004 entered into contracts with Rent-A-Center or RentWay for rent-to-own merchandise for a term of four months or longer demand is hereby made that Rent-A-Center and RentWay comply with the law and compensate all Massachusetts consumers who been damaged by this illegal conduct. In particular, request is hereby made that Rent-A-Center and RentWay establish a settlement fund sufficient to return to each Massachusetts consumer an amount equal to all interest they were required to pay as part of their retail installment sales contracts, plus accumulated interest, costs and attorneys' fees incurred to date. Demand is also made that Rent-A-Center and RentWay immediately cease engaging in the methods, acts and practices outlined at length above. Moreover, Rent-A-Center and RentWay must also immediately reform all active rent-to-own agreements such that they will comply with RISA.

Pursuant to M.G.L. c. 93A, §9, you are required to respond to this demand letter with a good faith offer of settlement within 30 days. Your failure to respond or a response that does

Mark E. Speese
Page 5
March 25, 2008


not include a good faith offer of settlement may subject you to an assessment by the Court of double damages and up to treble damages.

    Please feel free to have your legal representative contact me if he or she would like to discuss this matter further.

                             Very truly yours,

                             Christopher Weld, Jr


cc: Jaaziel Costa
    Joy Silva